# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

m 01-50440

_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JEFFREY MATTHEWS,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Western District of Texas

_____

November 12, 2002


Before JONES, SMITH, and SILER,[*]
Circuit Judges.

JERRY E. SMITH, Circuit Judge:

For the second time, Jeffrey Matthews appeals his sentences for convictions of carjacking and conspiracy to commit carjacking.

[*] Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

Although both sentences violate *Apprendi v. New Jersey*, 530 U.S. 466 (2000), these errors are harmless under *Chapman v. California*, 386 U.S. 18 (1967), so we affirm.

I.
A.

We described the facts of Matthews's heinous crimes in his first appeal, *United States v. Matthews*, 178 F.3d 295, 297-98 (5th Cir. 1999) ("*Matthews I*"), so we review them only briefly here. Matthews and three other men

stalked Terrie Dittman as she drove her van home. When she pulled into her driveway, Matthews took a gun from his co-defendant, Michael Cook, walked up to the van's driver-side window, and pointed the gun at Dittman. When she tried to drive away, Matthews shot at her five times and hit her three times, grievously injuring her and leaving her for dead.

A jury convicted Matthews of carjacking in violation of 18 U.S.C. § 2119, conspiracy to commit carjacking in violation of 18 U.S.C. § 371, and using or carrying a firearm during a carjacking in violation of 18 U.S.C. § 924(c). (Cook was convicted of similar crimes.) The district court sentenced Matthews to (1) twenty-five years' imprisonment for carjacking, which included a ten-year enhancement because he inflicted serious bodily injury, 18 U.S.C. § 2119(2); (2) seven years for conspiracy, which included a two-year enhancement under the criminal street gangs statute, 18 U.S.C. § 521; and (3) five years for the firearms violation. The court ordered the sentences to run consecutively, for a total of thirty-seven years.

In *Matthews I*, this court affirmed Matthews's convictions on all three counts and affirmed his conspiracy and firearms sentences, but vacated his carjacking sentence. After the district court sentenced Matthews but before we had decided *Matthews I*, the Court held in *Jones v. United States*, 526 U.S. 227 (1999), that the carjacking statute, 18 U.S.C. § 2119, stated three separate offenses, not one offense with three possible sentences.[1] For simplicity,

we herein refer to these offenses as simple carjacking, § 2119(1); carjacking resulting in serious bodily injury, § 2119(2); and carjacking resulting in death, § 2119(3).

The maximum sentence for simple carjacking is fifteen years; for carjacking resulting in serious bodily injury, twenty-five years; and for carjacking resulting in death, life imprisonment or death. "[T]he serious bodily injury aspect of § 2119(2) was not included in the indictment or presented to the jury," *Matthews I*, 178 F.3d at 301, because Matthews's trial and sentencing preceded *Jones*. Nevertheless, Matthews received the benefit of *Jones* on his direct appeal, so "we vacate[d] Matthews' sentence for carjacking and remand[ed] to the district court for re-sentencing consistent with *Jones* and the lower maximum imprisonment of § 2119(1)." *Id.*

On the other hand, we affirmed the two-year enhancement of Matthews's conspiracy sentence under the criminal street gangs statute, 18 U.S.C. § 521. Section 521(b) states that "[t]he sentence of a person convicted of an offense described in subsection (c) shall be increased by up to 10 years if the offense is committed under the circumstances described in subsection (d)."[2] Subsection (d) identifies three facts necessary to increase a defendant's sentence under subsection (b): The defendant (1) "participates in a criminal street gang with knowledge that its members engage in or have

---

[1] *Jones* rested partly on ordinary principles of statutory interpretation, 526 U.S. at 232-39, but also on the canon of constitutional doubt, 526 U.S. at 239-52. These doubts were identical to the (continued...)

(...continued)
eventual holding of *Apprendi*. Indeed, the Supreme Court has observed that *Apprendi* "was foreshadowed by our opinion in *Jones*." *Apprendi*, 530 U.S. at 476 (citation omitted).

[2] Matthews does not dispute that both carjacking and conspiracy to commit carjacking are qualifying § 521(c) offenses.

engaged in a continuing series of offenses described in subsection (c)," (2) "intends to promote or further the felonious activities of the criminal street gang or maintain or increase his or her position in the gang," and (3) "has been convicted within the past 5 years" of a crime within several listed categories.[3]  18 U.S.C. § 521(d).

Matthews challenged the § 521 enhancement as a violation of his Fifth and Sixth Amendment rights.  "Matthews argue[d] that § 521 is a separate offense that must be charged by indictment, proven beyond a reasonable doubt, and submitted to a jury for its verdict as required by the Fifth and Sixth Amendments."  *Matthews I*, 178 F.3d at 302. Using the ordinary tools of statutory interpretation, we agreed with the district court that § 521 is a sentence enhancement statute, not a separate offense the elements of which must be pleaded in the indictment and proven to a jury beyond a reasonable doubt. *Id.*    Thus, we affirmed the two-year enhancement of the conspiracy sentence based on evidence presented by the government "during the sentencing phase of the trial."  *Id.* at 303.

### B.

On remand, both parties sought more than a ministerial resentencing order.   The government urged the court not only to sentence Matthews to fifteen years for simple carjacking under § 2119(1), but also to enhance this sentence by ten years under § 521 based on the court's earlier factual findings for the § 521 enhancement of the conspiracy sentence. Matthews, however, urged the court

to reconsider the § 521 enhancement of the conspiracy sentence because the Supreme Court had decided *Apprendi* after our decision in *Matthews I* but before the district court resentenced him.    He argued that *Apprendi* was an intervening change of law that effectively overruled our holding in *Matthews I* that the necessary facts for a § 521 enhancement need not be pleaded in the indictment and proven to a jury beyond a reasonable doubt.   Further, for the same reasons, he argued against the government's requested § 521 enhancement of the carjacking sentence.[4]

The district court accepted the government's arguments and resentenced Matthews to fifteen years for simple carjacking under § 2119(1) but added a ten-year enhancement under § 521 based on its earlier factual findings.  The court declined to reconsider its earlier two-year § 521 enhancement of the conspiracy sentence, thus achieving its original sentencing intent of twenty-five years for the carjacking offense and thirty-seven total years.

### II.

Matthews appeals the § 521 enhancements of the carjacking and the conspiracy sentences. The enhancements rest on identical factual findings and thus pose one underlying legal question, namely, the validity, after *Apprendi*, of a § 521 enhancement based on facts not pleaded in the indictment and not proven to a jury beyond a reasonable doubt.

Before we reach the merits of this question, however, we must address two procedural questions.  Matthews argues that the doctrine

---

[3] Matthews does not dispute that his long criminal record includes several crimes within these categories.

[4] He also argued that the requested § 521 enhancement for the carjacking sentence would exceed our mandate from *Matthews I*.

of law of the case *permitted* the district court to reconsider and vacate its § 521 enhancement of his conspiracy sentence and *prohibited* the court from enhancing his carjacking sentence under § 521. We agree with the former but not the latter. Thus, we may review both § 521 enhancements.

### A.

"Under the law of the case doctrine, an issue of fact or law decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal." *Tollett v. City of Kemah*, 285 F.3d 357, 363 (5th Cir. 2002) (citation omitted), *cert. denied*, 2002 U.S. App. LEXIS 6495 (U.S. Oct. 7, 2002). Without this doctrine, cases would end only when obstinate litigants tire of re-asserting the same arguments over and over again. Moreover, the doctrine discourages opportunistic litigants from appealing repeatedly in hopes of obtaining a more sympathetic panel of this court. *United States v. Becerra*, 155 F.3d 740, 752 (5th Cir. 1998). The doctrine of law of the case, in other words, is essential to the orderly administration of justice.

At the same time, law of the case is not a jurisdictional rule, but a discretionary practice. The doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Messenger v. Anderson*, 225 U.S. 436, 444 (1912).[5] Law of the case therefore "is not in

violate." *Becerra*, 155 F.3d at 752. The doctrine has three exceptions: (1) The evidence at a subsequent trial is substantially different; (2) there has been an intervening change of law by a controlling authority; and (3) the earlier decision is clearly erroneous and would work a manifest injustice. *Id.* at 752-53.

These observations about law of the case extend as well to the so-called mandate rule, which is but a specific application of the general doctrine of law of the case. That rule "provides that a lower court on remand must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of that court." *Id.* at 753 (internal alterations and quotation marks omitted). The mandate rule, however, has the same exceptions as does the general doctrine of law of the case; these exceptions, if present, would permit a district court to exceed our mandate on remand. *Id.*

### B.

The district court could have reconsidered, and this court can review, the § 521 enhancement of the conspiracy sentence, because *Apprendi* was an intervening change of law that effectively overruled our decision affirming this enhancement in *Matthews I*. In his first appeal, Matthews presciently anticipated the eventual ruling in *Apprendi*. He squarely argued that the necessary facts for a § 521 enhancement "must be charged by indictment, proven beyond a reasonable doubt, and submitted to a jury for its verdict as required by the Fifth and Sixth Amendments." *Matthews I*, 178 F.3d at 302.

---

[5] "The courts are understandably reluctant to reopen a ruling once made. . . . Reluctance, however, does not equal lack of authority. The constraint is a matter of discretion. So long as a case remains alive, there is power to alter or revoke earlier rulings." WRIGHT, MILLER & COOPER, (continued...)

[5](...continued)
FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2D § 4478, at 637 (2002).

4

In *Apprendi*, the Court adopted this position almost verbatim: "[A]ny fact (other than a prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Apprendi*, 530 U.S. at 476 (quoting *Jones*, 526 U.S. at 243 n.6). As we explain in greater detail, *infra* part III.A, *Apprendi* repudiates *Matthews I*. Law of the case therefore did not prevent the district court from reconsidering the § 521 enhancement of the conspiracy sentence, nor does it prevent us from entertaining Matthews's challenge in this appeal.

C.

Though unenthusiastic about law of the case on his conspiracy sentence, Matthews understandably is an ardent defender of the mandate rule on his carjacking sentence. The mandate in *Matthews I* stated that "we vacate Matthews'[s] sentence for carjacking and remand to the district court for re-sentencing consistent with *Jones* and the lower maximum imprisonment of § 2119(1)." *Matthews I*, 178 F.3d at 301. Matthews argues that this mandate prohibited the court from enhancing his carjacking sentence under § 521. We disagree, concluding that the district court did not exceed our mandate from *Matthews I*.

To determine whether the district court complied with the mandate rule, we must determine the meaning of the *Matthews I* mandate. This court has adopted a restrictive rule for interpreting the scope of the mandate in the criminal resentencing context. *United States v. Marmolejo*, 139 F.3d 528 (5th Cir. 1998) ("*Marmolejo II*").

In *United States v. Marmolejo*, 106 F.3d 1213 (5th Cir. 1997) ("*Marmolejo I*"), we reversed sentence reductions for the defendant's acceptance of responsibility and his role as a minor participant in a conspiracy, and remanded for resentencing. On remand, the defendant challenged an unappealed aspect of his initial sentence, namely, an enhancement for obstruction of justice, but the court declined to reconsider this enhancement. *Marmolejo II*, 139 F.3d at 529. The defendant argued on appeal that a resentencing hearing should be *de novo*, and the district court should be able to (re)consider every legal and factual ground for every aspect of his sentence for every count. *Id.* at 530.

Although noting that a majority of the circuits had adopted this view, we rejected it and took the minority view that "only those discrete, particular issues identified by the appeals court for remand are properly before the resentencing court." *Id.*

> The only issues on remand properly before the district court are those issues arising out of the correction of the sentence ordered by this court. In short, the resentencing court can consider whatever this court directsSSno more, no less. All other issues not arising out of this court's ruling and not raised before the appeals court, which could have been brought in the original appeal, are not proper for reconsideration by the district court below.

*Id.* at 531. Thus, we affirmed the district court's refusal to reconsider its initial enhancement for obstruction of justice, because the defendant had not appealed that enhancement in *Marmolejo I* and it did not arise out of our mandate in *Marmolejo I*.

At first blush, *Marmolejo II* seems to prohibit the § 521 enhancement for the carjacking

5

sentence. Although we discussed § 521 as we reviewed Matthews's conspiracy sentence, *Matthews I*, 178 F.3d at 301-03, we did not mention the statute as we reviewed his carjacking sentence, *id.* at 301. Moreover, our mandate did not refer to § 521: "[W]e vacate Matthews'[s] sentence for carjacking and remand to the district court for re-sentencing consistent with *Jones* and the lower maximum imprisonment of § 2119(1)." *Id.* Matthews therefore appears on solid ground when he argues that the court exceeded the scope of our mandate (even though he does not cite *Marmolejo II*).

At second glance, however, this argument misunderstands the effect of *Jones* on § 2119 and the nature of our mandate in *Matthews I*. Without the aid of *Jones*, the grand jury indicted Matthews for, and the petit jury convicted him of, a single abstract crime known as "carjacking" under § 2119. The district court, also without the aid of *Jones*, enhanced Matthews's sentence by ten years under § 2119(2) because he had caused "serious bodily injury" to Dittman. We vacated this sentence because "the [Supreme] Court construed § 2119(1), (2), & (3) 'as establishing three separate offenses by the specification of distinct elements, each of which must be charged and proven by indictment, proven beyond a reasonable doubt, and submitted to a jury for its verdict.'" *Matthews I*, 178 F.3d at 301 (quoting *Jones*, 526 U.S. at 252).

Matthews and the government still conceive of *Matthews I* as affirming a single abstract crime known as "carjacking" under § 2119 and remanding for resentencing for that crime. This conception is wrong. After *Jones*, there is no such crime as "carjacking" under § 2119. Rather, there are three distinct crimes under,

respectively, § 2119(1), (2), and (3), what we have called simple carjacking, carjacking resulting in serious bodily injury, and carjacking resulting in death.

Matthews was sentenced initially as if he had been convicted of carjacking resulting in serious bodily injury under § 2119(2). *Jones* undermined this conviction, because the government had not pleaded or proved the serious bodily injury element. Thus, when we vacated the sentence and remanded in *Matthews I*, we did not merely vacate a sentence; instead, we vacated Matthews's entire conviction of the aggravated offense of carjacking resulting in seriously bodily injury, and remanded for sentencing on the lesser included offense of simple carjacking.

When the case is understood in this light, Matthews *had never been sentenced* for the lesser included offense of simple carjacking. Likewise, the district court had never conducted a full *de novo* sentencing hearing on this conviction or allowed the parties to argue for enhancements or reductions in the sentence for this conviction. Thus, the necessary and logical implication of our mandate in *Matthews I* was to authorize the district court to conduct just such a hearing. This implication takes this case outside the realm of *Marmolejo II*, which dealt only with resentencing on the same conviction, and makes the § 521 enhancement of the simple carjacking sentence on remand perfectly appropriate.

We acknowledge that our mandate in *Matthews I* might have contributed to the parties' confusion. Again, it stated: "[W]e vacate Matthews'[s] sentence for carjacking and remand to the district court for re-sentencing consistent with *Jones* and the lower maximum imprisonment of § 2119(1)." *Matthews I*, 178

6

F.3d at 301. The mandate does not refer to Matthews's conviction and does refer to his "sentence" and to a remand for "re-sentencing."

Yet, to be "consistent with" *Jones* and § 2119(1), this mandate must be understood as vacating the conviction and the sentence for carjacking resulting in serious bodily injury. Moreover, our comment that we remanded for "re-sentencing" merely reflects that Matthews still had a valid conviction for the lesser included offense of simple carjacking, so the court did not need to hold a new trial on the question of guilt.

Furthermore, the district court "must implement the letter and the spirit" of our mandate, *Becerra*, 155 F.3d at 753 (citation and internal quotation marks omitted), both of which indicate that we intended the court to hold a full *de novo* hearing on the sentence for the lesser included offense of simple carjacking, for which Matthews had never been sentenced. First, there is no logical inconsistency between the *Matthews I* mandate and what the district court did on remand. We directed the court to resentence consistent with *Jones* and § 2119(1), i.e., the lesser included offense of simple carjacking, the only crime for which Matthews was properly convicted. The court did just that, imposing the base fifteen-year sentence for simple carjacking under § 2119(1) and then enhancing the base sentence under § 521.

Second, if we had intended only a ministerial resentencing, we could have reversed and rendered the fifteen-year sentence to save everyone involved time, expense, and effort.[6] That we did not reverse and render indicates that we intended the district court to engage in a full *de novo* hearing on the theretofore unsentenced conviction of the lesser included offense of simple carjacking. Moreover, if we had not intended that court to consider enhancements or reductions to the sentence, we would have been more explicit, for example, by remanding "for resentencing for not more than fifteen-years as required by § 2119(1)."[7]

To illustrate the point further, imagine a hypothetical but nearly identical case. If Matthews committed these crimes today, i.e., after *Jones*, the government likely would indict him for carjacking resulting in serious bodily injury under § 2119(2) and the lesser included offense of simple carjacking under § 2119(1). Suppose that the jury convicted (with proper instructions) on both counts, and the district court properly sentenced him for the aggravated offense but not the lesser included offense. Suppose further that Matthews appealed his convictions for insufficient evidence. On appeal, suppose finally that we reversed the conviction for carjacking resulting in serious bodily injury because insufficient evidence supported the element of serious bodily injury, but we affirmed the conviction for simple carjacking because sufficient evidence supported the remaining elements. What would we then do?

---

[6]*See, e.g., United States v. Hernandez-Guevara*, 162 F.3d 863, 878 (5th Cir. 1998) ("[W]e need not waste judicial resources by remanding for what undoubtedly would be a rote resentencing.").

[7]*See, e.g., United States v. Bell*, 470 F.2d 1178 (5th Cir. 1978) (vacating and remanding after district court ignored a mandate that the new sentence was "not to exceed six years").

We would vacate the conviction and the sentence for carjacking resulting in serious bodily injury, and we would remand for sentencing on the lesser included offense of simple carjacking, for which the defendant had never been sentenced. Our mandate might even say that we remand "for resentencing consistent with § 2119(1)." Under these circumstances, no one would doubt that the district court could, and indeed should, conduct a full *de novo* sentencing hearing for the simple carjacking conviction.[8] The only difference between this hypothetical and this case is the timing of *Jones*, which does not make a difference to the meaning of our mandate in *Matthews I*.

In sum, our mandate in *Matthews I* authorized the district court to conduct a full *de novo* sentencing hearing on the conviction of simple carjacking and to entertain any requests for enhancements or reductions in the fifteen-year sentence authorized by § 2119(1). The court complied with our mandate. It therefore did not violate the mandate rule.

### III.

With these procedural matters settled, we reach the question whether *Apprendi* permits a § 521 enhancement based on facts not pleaded in the indictment and not proven to a jury beyond a reasonable doubt. Matthews mounts identical challenges to the § 521 enhancements for the carjacking and the conspiracy convictions.

The enhancements required three essential factual findings: (1) participation in a criminal street gang with knowledge of its criminal activities, (2) intent to promote or further these activities or to maintain or increase one's position in the gang, and (3) a prior conviction for certain kinds of offenses. 18 U.S.C. § 521(d). The district court found these facts by a preponderance of the evidence during the sentencing hearing. Matthews argues that this procedure violates his Fifth Amendment right to be charged by indictment with all the essential elements of his crime[9] and his Sixth Amendment right to require a jury finding of guilt beyond a reasonable doubt on every element of the crime.[10]

---

[8] Any other approach would unduly restrict the prosecution's discretion and expose the criminal defendant to unnecessarily harsh sentences. Where a defendant is convicted of an aggravated and a lesser included offense, the prosecution may believe that the maximum sentence for the aggravated offense is sufficiently long, but the maximum sentence for the lesser included offense is too short. Because the defendant is sentenced only for the aggravated offense, the prosecution need not request any enhancements. Yet, if the prosecution feared that an appellate court might reverse the aggravated offense conviction or sentence and remand for resentencing on the lesser included offense without the possibility of enhancements, the prosecution likely will seek enhancements in the initial sentencing despite its belief that the enhancements are needlessly harsh. *Cf. United States v. Campbell*, 106 F.3d 64, 68 (5th Cir. 1997) (endorsing the "aggregate approach" when evaluating a *Pearce* vindictive resentencing claim because "[s]entencing is a fact-sensitive exercise that requires district court judges to consider a wide array of factors when putting together a 'sentencing package'" and therefore "the district court's job on remand is to reconsider the entirety of the (now-changed) circumstances and fashion a sentence that fits the crime and the criminal").

[9] U.S. CONST. amend. V; *United States v. Hamling*, 418 U.S. 87, 117 (1970).

[10] U.S. CONST. amend. VI; *United States v. Gaudin*, 515 U.S. 506, 510 (1995); *Sullivan v. Louisiana*, 508 U.S. 275, 278 (1993); *In re Winship*, 397 U.S. 358, 364 (1974).

"The applicability of *Apprendi* to this case is a question of law that we review *de novo*." *United States v. Stone*, 306 F.3d 241, 243 (5th Cir. 2002). Following *Apprendi*, we agree that this procedure violated Matthews's Fifth and Sixth Amendment rights, but we also conclude that these errors were harmless. We therefore affirm both § 521 enhancements.

A.

In his first appeal, Matthews challenged the § 521 enhancement of his conspiracy conviction on an identical ground. "Matthews argue[d] that § 521 is a separate offense that must be charged by indictment, proven beyond a reasonable doubt, and submitted to a jury for its verdict as required by the Fifth and Sixth Amendments." *Matthews I*, 178 F.3d at 302. We rejected this challenge, "hold[ing] that § 521 is a sentence enhancement statute rather than a separate offense." *Id.* We reached this interpretation by carefully reviewing the text and legislative history of § 521 and the Sentencing Commission's treatment of § 521 as a sentence enhancement provision. *Id.* These sources, we thought then and still believe, were "overwhelming evidence of Congress'[s] intent regarding § 521" as a sentence enhancement statute, not a separate criminal offense. *Id.* This distinction, we held in *Matthews I*, permitted the district court to find the essential facts of a § 521 enhancement by a mere preponderance of the evidence. *Id.*

This distinction, however, is largely irrelevant after Apprendi[11]: "[A]ny fact (other than a prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Apprendi*, 530 U.S. at 476 (quoting *Jones*, 526 U.S. at 243 n. 6).[12] *Apprendi* repeatedly disparaged the distinction between a fact characterized as a sentencing factor and a fact characterized as an element of a separate offense when the fact increases the statutory maximum penalty.[13]

---

[11](...continued) facts increasing the minimum sentence." *Ring v. Arizona*, 122 S. Ct. 2428, 2441 n.5 (2002) (citing *Harris v. United States*, 122 S. Ct. 2406, 2419 (2002) (plurality)). *But see Harris*, 122 S. Ct. at 2428 (Thomas, J., dissenting) (observing that "only a minority of the Court embrac[es] the distinction" between facts increasing the statutory maximum penalty and the statutory minimum penalty).

[12] There are actually two rules of *Apprendi*, because the Fifth Amendment's Grand Jury Clause, alone among the Bill of Rights, has not been applied to the states through the Fourteenth Amendment's Due Process Clause. Thus, the rule of *Apprendi* as applied to the states is that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. We cite the federal version of the rule here, because the Grand Jury Clause applies to Matthews's federal crime.

[13] *See, e.g., Apprendi*, 530 U.S. at 492 (rejecting the argument that a finding of biased purpose "is not an 'element' of a distinct hate crime offense, but rather the traditional 'sentencing factor' of motive" as "nothing more than a disagreement with the rule we apply today"); *id.* at 494 ("the relevant inquiry is one not of form, but of effectSSdoes the required finding expose the (continued...)

---

[11] We say the distinction is only "largely" instead of "wholly" irrelevant after *Apprendi*, because "a majority of the [Supreme] Court concludes that the distinction between elements and sentencing factors continues to be meaningful as to (continued...)

9

The Supreme Court unequivocally re-enunciated this principle earlier this year. "As to elevation of the maximum punishment . . . *Apprendi* repeatedly instructs in that context that the characterization of a fact or circumstance as an 'element' or a 'sentencing factor' is not determinative of the question 'who decides,' judge or jury." *Ring*, 122 S. Ct. at 2441. "[T]he fundamental meaning of the jury-trial guarantee of the Sixth Amendment is that all facts essential to imposition of the level of punishment that the defendant receivesSSwhether the statute calls them elements of the offense, sentencing factors, or Mary JaneSSmust be found by the jury beyond a reasonable doubt." *Id.* at 2444 (Scalia, J., concurring).

The import of *Apprendi* is inescapable: If a fact increases the statutory maximum

_____

(...continued)
defendant to a greater punishment than that authorized by the jury's guilty verdict?"); *id.* at 494 n. 19 ("[W]hen the term 'sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict."); *id.* at 495 ("merely because the state legislature placed its hate crime sentence 'enhancer' within the sentencing provisions of the criminal code does not mean that the finding of biased purpose to intimidate is not an essential element of the offense") (internal quotation marks omitted); *id.* at 501 (Thomas, J., concurring) ("[I]f the legislature defines some core crime and then provides for increasing the punishment of that crime upon a finding of some aggravating fact . . . the core crime and the aggravating fact together constitute an aggravated crime, just as much as grand larceny is an aggravated form of petit larceny. The aggravated fact is an element of the aggravated crime.").

penalty, it must be pleaded in the indictment and found by a jury beyond a reasonable doubt, regardless of whether Congress intended the fact to be a "sentencing factor" or an "element" of a separate offense. Section 521 requires findings of just this kind of fact. Matthews faced a statutory maximum of fifteen years for his simple carjacking offense, 18 U.S.C. § 2119(1), and a statutory maximum of five years for his conspiracy offense, 18 U.S.C. § 371. Section 521 increased these maximum sentences by up to ten years each if he was found to have committed these offenses (1) while participating in a criminal street gang with knowledge of its criminal activities, (2) with intent to promote or further these activities or to maintain or increase his position in the gang, and (3) with a prior conviction for certain kinds of offenses. Without a finding of these facts, Matthews would have faced only a fifteen- and a five-year sentence, respectively, on each count.

Therefore, to the extent that *Matthews I* held that the district court could find these facts by a preponderance of the evidence and thereby increase Matthews's sentence under § 521, *Apprendi* plainly overruled *Matthews I*. The essential facts for a § 521 enhancementSSwhatever label one wishes to give themSSmust be pleaded in an indictment and found by a jury beyond a reasonable doubt.

The government more or less concedes this position, because it does not argue that § 521 does not increase the statutory maximum penalty for Matthews's offenses or that the distinction between a sentencing factor and an element of a separate offense is relevant for this case. Instead, the government urges that our ruling in *Matthews I* is law of the case. As should be obvious from the foregoing analysis, *Apprendi* is an intervening change of law that

10

overrules our earlier holding in this case.

Perhaps realizing this, the government also argues that § 521 is a mere recidivist statute, the findings for which need not be pleaded in an indictment or submitted to a jury. The Court held in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), that the fact of a prior conviction can be used to enhance a sentence beyond the statutory maximum without pleading the fact in the indictment or submitting it to a jury. *Apprendi* incorporates this holding by exempting from the rule of *Apprendi* the fact of a prior conviction. *Apprendi*, 530 U.S. at 476, 490. The Court warned in *Apprendi*, however, that *Almendarez-Torres* "represents at best an exceptional departure from the historic practice," *id.* at 487, and should be treated "as a narrow exception to the general rule [of *Apprendi*]" *id.* at 490.

The government undoubtedly is correct that the fact of a prior conviction of certain kinds of offenses is required for a § 521 enhancement, 18 U.S.C. § 521(d)(3), and that this fact need not be pleaded in the indictment or submitted to a jury under *Almendarez-Torres*.[14] Yet, the government is woefully incorrect that this required factual finding moves § 521 as a whole out of *Apprendi* and into *Almendarez-Torres*.

In addition to the fact of a prior conviction, § 521 requires two additional factual findings:

---

[14] The *Almendarez-Torres* exception extends beyond the question whether a prior conviction exists and to the question whether it is a qualifying conviction under the statute. *Stone*, 306 F.3d at 243 (sustaining 18 U.S.C. § 924(e) against an *Apprendi* challenge). This question is not at issue here, because Matthews concedes that his prior convictions qualified under § 521(d)(3).

(1) participation in a criminal street gang with knowledge of its criminal activities and (2) intent to promote or further these activities or to maintain or increase one's position in the gang. 18 U.S.C. § 521(d)(1)-(2). These two facts are unrelated to the fact of a prior conviction, but directly related to the current charged offense. They also resemble the element of *mens rea*, a classic criminal law finding reserved for the jury. *Apprendi*, 530 U.S. at 493 & n.8. They do not become exempt from the rule of *Apprendi* simply because they are located in the statute next to the finding of a prior conviction, especially given the command in *Apprendi* that the courts not unduly expand the *Almendarez-Torres* exception.

The government unpersuasively tries to analogize § 521 to other recidivism enhancement statutes, 18 U.S.C. §§ 924(e) and 3559, which enhance a sentence for a prior conviction of a certain kind of offense, for example, a "serious drug offense." The government leans heavily on cases holding that a judge, not a jury, should determine whether a prior conviction is a qualifying offense under these statutes.[15] "[A] fact of prior conviction includes not only the fact that a prior conviction exists, but also a determination of whether a conviction is one of the enumerated types qualifying for the sentence enhancement under section 3559." *Davis*, 260 F.3d at 969.

---

[15] *See United States v. Santiago*, 268 F.3d 151, 156 (2d Cir. 2001), *cert. denied*, 122 S. Ct. 1946 (2002) (applying *Almendarez-Torres* exception to 18 U.S.C. § 924(e)); *United States v. Davis*, 260 F.3d 965, 969 (8th Cir. 2000), *cert. denied*, 122 S. Ct. 909 (2002) (applying *Almendarez-Torres* exception to 18 U.S.C. § 3559); *United States v. Gatewood*, 230 F.3d 186, 191-92 (6th Cir. 2000) (en banc), *cert. denied*, 122 S. Ct. 911 (2002) (same).

This proposition, however, does not support the government's attempt to shoehorn § 521 into *Almendarez-Torres*. Unlike §§ 924(e) and 3559, § 521 requires additional factual findings unrelated to the nature of the prior conviction, i.e., participation with knowledge and intent. 18 U.S.C. § 521(d)(1)-(2). The government overlooks this critical distinction.

Section 521 is a relatively new statute, and, as far as we can tell, *Matthews I* is the only case interpreting it. We therefore want to be unambiguous: We do not conclude that § 521 is unconstitutional, but only that *Apprendi* requires the facts of (1) participation in a criminal street gang with knowledge of its criminal activities and (2) intent to promote or further these activities or to maintain or increase one's position in the gang, 18 U.S.C. § 521(d)(1)-(2), to be charged in the indictment, submitted to a jury, and proven beyond a reasonable doubt before a court may enhance a sentence under § 521(b).

In this case, the indictment did not charge, and the jury did not find beyond a reasonable doubt, either fact. Instead, the court found both facts (plus the fact of a qualifying prior conviction) by a preponderance of the evidence. This procedure violated Matthews's Fifth and Sixth Amendment rights.[16]

---

[16] In finding these errors, we do not disparage the district court. It initially sentenced Matthews before the Supreme Court decided *Jones*, much less *Apprendi*. Although resentencing occurred after *Apprendi*, we expressly approved, in *Matthews I*, the procedure used to enhance Matthews's sentence under § 521. Throughout this long and complicated case, the district court conscientiously tried to follow this rapidly changing area of law, and we commend its diligent and dutiful efforts.

B.

We now apply the *Chapman* harmless error analysis. Matthews alleges a general *Apprendi* error, which is really two specific kinds of constitutional error, i.e., a defective indictment and a defective jury instruction. Neither belongs in the "limited class of fundamental constitutional errors that 'defy analysis by harmless error standards.'" *Neder v. United States*, 527 U.S. 1, 8 (1999) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309 (1991)). The Supreme Court has applied harmless error analysis to a jury instruction that omits an essential element. *Id.* at 10. This court has applied harmless error analysis to an indictment that omits an essential element. *United States v. Baptiste*, 2002 U.S. APP. LEXIS 20745, at *6-7 (5th Cir. Oct. 2, 2002). In short, *Apprendi* error is susceptible to harmless error analysis. *United States v. Virgen-Moreno*, 265 F.3d 276, 297 (5th Cir. 2001), *cert. denied*, 534 U.S. 1095, *and cert. denied*, 122 S. Ct. 1452 (2002).

"An otherwise valid conviction will not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986). "The standard for determining harmlessness when a jury is not instructed as to an element of an offense is whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element." *Virgen-Moreno*, 265 F.3d at 297 (citation and internal quotation marks omitted). After a careful review of the whole record, we are convinced that any rational grand jury, when presented with a proper indictment, would have charged, and any rational petit jury, when presented with a proper jury instruction, would have found beyond a reasonable doubt, that

Matthew committed the offenses of carjacking and conspiracy to commit carjacking while participating in a criminal street gang with knowledge of its activities and with the intent either to promote or further the gang's felonious activities or to increase his position in the gang.

The evidence at trial was extensive, overwhelming, and essentially uncontradicted on these issues. The government's main witnesses, Pamela Douglas and Teana Williams, testified that Matthews confessed to them to shooting Dittman and that Matthews belonged to the Crips, a violent criminal street gang. They based this testimony not only on direct observation of Matthews's interaction with fellow gang members, but also on his boasts to them of membership in the Crips. Moreover, Douglas and Williams testified that Cook belonged to the Crips, again based on direct observation and Cook's boasting. Finally, they stated that Matthews bragged about the shooting to his fellow gang members.

Matthews tried to exclude, but did not controvert, this testimony. The jury obviously credited it, because they were the only witnesses who testified to Matthews's confession.

Ronald Nicholson, a juvenile who was riding with Cook and Matthews during the carjacking, also testified against Matthews. Nicholson identified Matthews and Cook as members of the Crips, and Cook as a leading figure in the gang. He also testified that the fourth person in the car, Marlin Brunson, belonged to the Crips. Moreover, he stated that Cook passed the gun used in the carjacking to Matthews when Matthews asked for it. Finally, he admitted that, if he did not belong to the Crips (which he had admitted before the grand jury), he was closely associated with many of them, including Matthews and Cook.

Again, Matthews tried only to exclude, not to controvert, this testimony. The jury obviously credited Nicholson's testimony as well, because he was the only person present for the carjacking who identified Matthews as the shooter.

The jury also heard the testimony of investigating officers Robert Morales and James Rickhoff, who testified that Cook admitted, during their investigation, that all four men in the car that eveningSSMatthews, Cook, Nicholson, and BrunsonSSbelonged to the Crips. Rickhoff also testified that Cook refused to identify the shooter because he would not betray his fellow gang member. They stated that Cook called himself a leader of the Crips.

Cook did not testify at trial, but these statements were admitted as non-hearsay admissions of a party-opponent. *See* FED. R. EVID. 801(d)(2). Though these statements would be inadmissible hearsay to prove Matthews's membership in the Crips, they did help establish the other three men's membership, which is directly relevant to the scope and criminal purposes of the Crips. Yet again, Matthews did not controvert this testimony.

Though we conclude this trial evidence demonstrates that the *Apprendi* error was harmless, additional evidence offered at the sentencing hearing further supports this conclusion.[17] The government offered the testi

---

[17] We may review evidence offered at the sentencing hearing for two reasons. First, the

(continued...)

mony of John Dyer, a longtime officer in the San Antonio Police Department with widespread experience with gangs in San Antonio and nationwide. Dyer offered very damaging testimony.

Dyer observed that Matthews and Cook regularly wore blue clothing, the traditional color of the Crips. He also identified and explained several gang-related tattoos on Matthews. First, Matthews has the numeral "187" tattooed on his neck. Dyer explained that "187" refers to the California penal code section for first-degree murder, CAL. PENAL CODE § 187, and is a common euphemismSSmore accurately, a callous dysphemismSSfor murder in gang culture. Second, Matthews has the phrase "killa, killa" tattooed on his neck. Dyer explained (not that explanation here was really necessary) that this

---

[17](...continued)

Court in *Neder* authorized harmless error review of evidence "the jury did not *actually* consider." *Neder*, 527 U.S. at 17. More importantly, any error in excluding this evidence was invited. *See United States v. Solis*, 299 F.3d 420, 452 (5th Cir. 2002) (applying the doctrine of invited error to an *Apprendi* error).

Matthews went to great lengths to exclude evidence of his gang activities. He filed a motion in limine. He requested, and received, a court order requiring the parties to give the district court notice at a sidebar before they referred to gang activities. He objected every time the government or a witness referred to gang activity. He successfully moved to exclude the testimony of the government's gang expert, who testified instead at the sentencing hearing. Matthews "clearly induced the erroneous omission" of evidence related to the § 521 enhancement. *Id.* at 453. He therefore cannot complain now that we consider this evidence on harmless error review.

phrase identified Matthews as a gang member who had committed murder.

Third, Matthews has three small teardrop tattoos under his right eye. According to Dyer, these teardrops have three possible meanings, none of them good. The most common meaning of teardrops are the number of victims one has murdered. A less common meaning is the number of dead fellow gang members or time spent in prison or jail.[18]

Next, Dyer explained that the San Antonio Police Department maintains an elaborate database on gang activity in the San Antonio area that reflected the large size of the Crips in San Antonio, much larger than the requisite five members under § 521(a). Moreover, the database indicated that Matthews, Cook, Brunson, and Nicholson belonged to the Crips. In particular, Matthews had six separate incidents of documented gang-related activities in the database. These documented incidents stretched back as far as January 1993, more than two years before Matthews committed the crimes in this case. Finally, Dyer testified that, based on his long experience with gangs and individual gangsters, he believed that Matthews's crimes were gang-related, not mere crimes of opportunity.

Matthews was riding in a car with three fellow Crips. He obtained the gun used in the crimes from Cook, a leading member of the Crips. Matthews boasted of his crimes to fellow Crips. He had a long and documented history of gang activity with the Crips. Any rational grand or petit jury, when presented with this evidence, could not and would not reach

---

[18] We note that Matthews had not spent three years in prison or jail before these offenses were committed.

"a contrary finding with respect to the omitted element[s]," *Virgen-Moreno*, 265 F.3d at 297 (citation and internal quotation marks omitted), namely, that Matthew committed his crimes while participating in the Crips with knowledge of its criminal activities and with the intent either to promote or further these activities or to increase his position in the Crips. The *Apprendi* errors in this case were harmless.

AFFIRMED.