**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 98-50055

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

VERSUS

JEFFREY MATTHEWS, MICHAEL COOK,

Defendants - Appellants.

Appeals from the United States District Court
for the Western District of Texas

June 4, 1999

Before JONES, DUHÉ, BARKSDALE, Circuit Judges.

JOHN M. DUHÉ, JR., Circuit Judge:

A jury convicted Jeffrey Matthews ("Matthews") and Michael Cook ("Cook") of carjacking pursuant to 18 U.S.C.A. § 2119 (West Supp. 1999), conspiracy to commit carjacking pursuant to 18 U.S.C.A. § 371 (West Supp. 1999), and using or carrying a firearm during a carjacking pursuant to 18 U.S.C.A. § 924(c) (West Supp. 1999). The Defendants make the following six arguments on appeal: (1) their antagonistic defenses and the introduction of the redacted statement of the other required a severance; (2) 18 U.S.C.A. § 2119(2) is an element of carjacking rather than a sentence enhancement statute; (3) 18 U.S.C.A. § 521 is a separate

offense rather than a sentence enhancement statute; (4) the testimony of F.B.I. Agent Walter Henry during the sentencing phase was inadmissible hearsay; (5) the testimony of a gang expert was not based on reliable methodology in violation of Daubert; and (6) the government presented insufficient evidence of gang activity to support Matthews' sentence enhancement under § 521. We vacate in part, remand in part for re-sentencing and affirm the Defendants' convictions.

## BACKGROUND

On March 2, 1995, Matthews, Cook, and two others followed Terrie Dittman ("Dittman") driving home in her new van. After she pulled into her driveway, Matthews pointed a gun at Dittman through the driver's side window and demanded her car. When Dittman attempted to flee by backing out of the driveway, Matthews shot the gun into her car five times hitting her several times and wounding her. Upon hearing the shots, Cook drove away leaving Matthews at the scene. Matthews stole another car from the neighborhood to escape.

Later that evening, the group reunited at the apartment of Pam Douglas and Teana Williams. Douglas and Williams testified Matthews bragged to the others that he shot a woman in an attempt to steal her van. The police apprehended Cook the next day while he and Matthews were driving the car Matthews had stolen the previous night. The police recovered the gun used in the shooting.

2

Ultimately, the police apprehended Matthews as well.

The Defendants were tried jointly. Each Defendant accused the other of shooting Dittman. Matthews claimed he was innocently driving the car when the shooting occurred, while Cook claimed he innocently sat in the back seat when the shooting occurred. Neither Defendant testified at trial. The government offered the Defendants' redacted post-arrest written statements containing these accusations at trial. In Matthews' statement, all references to Cook were stricken, and in Cook's statement, all references to Matthews were stricken as well. The officers who took their statements read them aloud at trial substituting the word "blank" for any stricken name or pronoun. Each Defendant's lawyer elicited the stricken name of the non-speaking Defendant when cross examining the officer reading the statement. The Defendants moved unsuccessfully for severance and for a mistrial.

A jury convicted both of carjacking pursuant to 18 U.S.C.A. § 2119 (West Supp. 1999), pursuant to conspiracy to commit carjacking 18 U.S.C.A. § 371 (West Supp. 1999), and using or carrying a firearm during a carjacking pursuant to 18 U.S.C.A. § 924(c) (West Supp. 1999). The district court enhanced Matthews' carjacking sentence pursuant to 18 U.S.C.A. § 2119(2) (West Supp. 1999) because he inflicted serious bodily injury upon Dittman, and enhanced his conspiracy to commit carjacking sentence under the criminal street gangs statute, 18 U.S.C.A. § 521 (West Supp. 1999). The Defendants appeal.

3

**DISCUSSION**

I. Severance

Appellants argue the district court abused its discretion in denying their motions for severance. They contend the admission of the other's statement violated their Sixth Amendment right to confront witnesses. See Gray v. Maryland, 118 S. Ct. 1151, 1155 (1998); Bruton v. United States, 391 U.S. 123, 126 (1968). Cook also contends their antagonistic defenses required a severance. The government counters that the district court did not abuse its discretion because it was guided by the law in effect at the time of trial, and Gray was not decided until after the Defendants were tried. Alternatively, the government argues any error in denying a severance was harmless or invited error. Finally, the government contends that a severance is not automatically required when co-defendants present antagonistic defenses, and that, on closer examination, the Defendants' defenses are not mutually exclusive.

District court may grant a severance "[i]f it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together." Fed. R. Crim. P. 14. We review the denial of severance for an abuse of discretion. See United States v. Pofahl, 990 F.2d 1456, 1483 (5th Cir. 1993). To prevail, "a defendant must show that he suffered specific and compelling prejudice against which the district court could not provide adequate protection, and

4

that this prejudice resulted in an unfair trial." United States v. Mitchell, 31 F.3d 271, 276 (5th Cir. 1994). However, we must also balance the possibility of prejudice against the interest of judicial economy. See United States v. Posada-Rios, 158 F.3d 832, 863 (5th Cir. 1998).

A. Antagonistic Defenses

Because each Defendant's defense strategy was to implicate the other, Cook argues he was prejudiced by Matthews' attorney's efforts to convict Cook in defending Matthews. Cook contends he was "facing an extra prosecutor" in Matthews' attorney which resulted in severe prejudice requiring a severance. United States v. Romanello, 726 F.2d 173, 179 (5th Cir. 1984). Considering the interest of judicial economy, Cook also argues that trying only two defendants separately would not have been very time consuming. See Schaffer v. United States, 221 F.2d 17, 19 (5th Cir. 1955).

Severance is not automatically required when co-defendants present mutually antagonistic defenses. See United States v. Zafiro, 506 U.S. 534, 538-39 (1993) (holding Rule 14 does not require severance even if prejudice is shown leaving the tailoring of relief granted to the district court's discretion); United States v. Mann, 161 F.3d 840, 863 (5th Cir. 1998). The government argues the district court's limiting instructions were sufficient to cure any prejudice caused by the Defendants' mutual accusations. The government also asserts the Defendants' defenses are not truly mutually exclusive and that, assuming their accusations are true,

5

the Defendants would still have been subject to criminal liability as aiders or abetters.

Assuming without deciding that the Defendants' defenses were mutually antagonistic, the court's limiting instructions were sufficient to cure any prejudice. See Mann, 161 F.3d at 863 (holding where defendants present antagonistic defenses, instructions to consider the evidence as to each defendant separately and individually, and not to consider comments made by counsel as substantive evidence, cure any prejudice caused when co-defendants accuse each other of the crime) (quoting United States v. Stouffer, 986 F.2d 916, 924 (5th Cir. 1993)); United States v. Castillo, 77 F.3d 1480, 1491 (5th Cir. 1993) (stating determinations concerning risk of prejudice resulting from antagonistic defenses must be left to discretion of district court to give weight to rule that persons indicted together be tried together in conspiracy cases). The district court instructed the jury:

> A separate crime is charged against one or more of the defendants in each count of the indictment. Each count, and the evidence pertaining to it, should be considered separately. Also, the case of each defendant should be considered separately and individually. The fact that you may find one or more of the accused guilty or not guilty of any crime charged should not control your verdict as to any other crime or defendant. You must give separate consideration to the evidence as to each defendant.
>
> Of course, any such statement [claimed to have been made by a defendant outside of the court] should not be considered in any way whatsoever as evidence with respect to any other defendant on trial. With respect to answers

6

to questions posed by counsel for Defendants, you are to disregard the mention in any out-of-court statement allegedly made by one defendant in the name of another defendant in this case.

Because "mutually antagonistic defenses are not prejudicial pre se" and "Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the discretion of the district courts", we hold the district court did not abuse its discretion in denying Matthews a severance. <u>Zafiro</u>, 506 U.S. at 541.

B.   Redacted Statements

Each Defendant argues the introduction of the other's redacted statement prejudiced him severely therefore requiring a severance. They rely on <u>Bruton v. United States</u>, 391 U.S. 123 (1968) (holding that the confession of a non-testifying co-defendant is admissible only against himself and only if it does not implicate the other defendant) and <u>Gray v. Maryland</u>, 118 S. Ct. 1151, 1155 (1998) (holding that a redaction that replaces a defendant's name with an obvious indication of deletion, such as a blank space, still falls within <u>Bruton's</u> protective rule), arguing that the introduction of their statements violated their Sixth Amendment right to confront witnesses.

The government responds that the district court did not abuse its discretion in allowing the redacted statements, because it is guided by the law in force at the time the Defendants were tried. Additionally, the government argues even if the district court erred, it was either harmless or invited error.

New constitutional rules of law always apply retroactively to criminal cases pending on direct review. See Brecht v. Abrhamson, 507 U.S. 619, 634 (1993) (citing Griffith v. Kentucky, 479 U.S. 314, 320-328(1987)). The government cites cases that clearly do not support its position. Gray represents an extension in the law from Bruton, requiring that the trial court either grant a severance or exclude the redacted statements from evidence. Gray, 118 S. Ct. 1151, 1155.[1] Because the introduction of the Defendants' redacted statements are now error under Gray, the remaining issues are whether this error was invited or harmless.

The government argues the district court's error was invited because both of the Defendants' attorneys elicited testimony from the officers reading the statements identifying the non-testifying co-defendant. See United States v. Reyes-Alvarado, 963 F.2d 1184, 1187 (9th Cir. 1992) ("a defendant who elicits a statement that may be violative of Bruton may not later claim error based on the admission of that statement."); United States v. Raymer, 876 F.2d 383, 388 (5th Cir. 1989) ("when injection of inadmissible evidence is attributable to the actions of the defense, the defense cannot

---

[1]Although we recently held, post-Gray, that a redacted statement does not violate Bruton if certain precautionary measures are taken, that holding is inapposite because in the instant case the statement did not meet those criteria. See United States v. Vejar-Urias, 165 F.3d 337, 340 (5th Cir. 1999) (holding there is no Bruton violation where the defendant's name is replaced with a neutral pronoun, the identification of the defendant is obvious only by reference to evidence other than the redacted statement, and the court gives limiting instructions).

later object to such 'invited error'.") However, the doctrine of invited error does not resolve this issue. The error was not that officers' testimony revealed the identity of the non-speaking Defendant in the redacted statements, but that the statements were introduced at all, thus violating Gray.

The government also contends that the introduction of the redacted statements was harmless error because there was overwhelming evidence of the Defendants' guilt excluding the redacted statements. See United States v. Vejar-Urias, 165 F.3d 337, 340 (5th Cir. 1999) ("a Bruton error may be considered harmless when, disregarding the co-defendant's confession, there is otherwise ample evidence against a defendant.")

The record reveals the following evidence in support of Matthews' conviction: (1) Nicholson[2], Williams, and Douglas testified that Matthews bragged about shooting Dittman and attempting to steal her van; (2) Nicholson testified that Matthews rode in the front seat of the Chevette while they followed the van, and that Matthews took Cook's gun and exited the vehicle; (3) Williams and Douglas testified that Matthews said he escaped from the scene by stealing a red car; (4) Douglas testified that Matthews told her he would not be caught for the shooting because Cook was arrested with the gun Matthews used; and (5) Matthews told police he was involved in a carjacking, and told Williams several

---

[2]Nicholson also rode in the Chevette during the carjacking.

weeks before the incident that he was interested in getting a van. The record reveals the following evidence in support of Cook's conviction: (1) Nicholson testified that Cook drove the Chevette following the van, gave Matthews the gun he used to shoot Dittman, and tried to locate and aid Matthews after the shooting; (2) Douglas and Williams testified that Cook carried the Chevette keys that night and asked where Matthews was; (3) the police recovered the gun from the shooting when they apprehended Cook; (4) Cook told police that he owned the gun used in the shooting; and (5) Cook defied two court orders requiring him to be photographed and measured. Because this evidence is more than sufficient to render the district court's error harmless, the Defendants' arguments fail.

II. Sentencing

The district court enhanced Matthews' sentence for carjacking pursuant to 18 U.S.C.A. § 2119(2) (West 1999) because he inflicted serious bodily injury upon his victim. The district court also enhanced his conspiracy conviction pursuant to 18 U.S.C.A. § 521 (West 1999) because of his involvement with and promotion of criminal street gangs. Matthews argues that § 2119(2)'s "serious bodily injury" requirement is an element of the offense of carjacking and that § 521 is a separate offense rather than a sentence enhancement statute. He asserts the government's failure to allege and prove these elements beyond a reasonable doubt violated his Fifth Amendment Due Process rights and his Sixth

10

Amendment right to trial by jury and to receive notice of the nature of the charges against him.  He also argues the district court erred in finding the evidence sufficient to support his sentence enhancement for gang involvement pursuant to § 521.

A.  Section 2119(2)

Section 2119(2)provides

> [w]hoever, with the intent to cause death or serious bodily harm takes a motor vehicle . . . from the person or presence of another by force and violence or by intimidation, or attempts to do so shall . . . (2) if serious bodily injury . . . results, be fined under this title or imprisoned not more than 25 years.

18 U.S.C.A. § 2119(2) (West Supp. 1999).[3]  This section allows an increased penalty for an offender who, in the course of carjacking, causes serious bodily injury.  The district court construed § 2119(2) as a sentence enhancing provision rather than an element of the crime, allowing the government to prove serious bodily injury only by a preponderance of the evidence rather than beyond a reasonable doubt.  Additionally, this subsection was not included in Matthews' indictment or the jury charges.

The Supreme Court has resolved this issue since Matthews was tried and the parties submitted their briefs.  In Jones v. United States, 119 S. Ct. 1215, 1228 (1999), the Court construed § 2119(1), (2) & (3) "as establishing three separate offenses by the specification of distinct elements, each of which must be charged

---

[3]Section 2119(1) imposes only a 15 year maximum for carjacking without serious bodily injury.

11

by indictment, proven beyond a reasonable doubt, and submitted to a jury for its verdict." Because the serious bodily injury aspect of § 2119(2) was not included in the indictment or presented to the jury, we vacate Matthews' sentence for carjacking and remand to the district court for re-sentencing consistent with Jones and the lower maximum imprisonment of § 2119(1).

B. Section 521

Section 521(b) provides that "[t]he sentence of a person convicted of an offense described in subsection (c) shall be increased by up to 10 years if the offense is committed under the circumstances described in subsection (d)." 18 U.S.C.A. § 521(b)(West Supp. 1999). Section 521 allows a district court to enhance the sentence of a defendant who:

> (1) participates in a criminal street gang with knowledge that its members engage in or have engaged in a continuing series of offenses described in subsection (c); (2) intends to promote or further the felonious activities of the criminal street gang or maintain or increase his or her position in the gang; and (3) has been convicted within the last 5 years [of a crime within several categories listed in the statute.]

Id. § 521(d). The district court construed § 521 as a sentence enhancing statute rather than a separate offense enhancing Matthews' sentence for conspiracy by two years. We review the district court's interpretation of a statute de novo. See United States v. Hebert, 131 F.3d 514, 525 (5th Cir. 1997), cert. denied 118 S. Ct. 1271 (1998).

1. Separate Offense or Sentence Enhancement?

12

Matthews argues that § 521 is a separate offense that must be charged by indictment, proven beyond a reasonable doubt, and submitted to a jury for its verdict as required by the Fifth and Sixth Amendments. He offers no support for his construction of the statute. The government contends that § 521's text and structure, legislative history, and interpretation by the Sentencing Commission establish that it is a sentence enhancement statute and not a separate offense.

In determining whether a statute is a separate offense or merely a sentencing factor, "we look to the statute's language, structure, subject matter, context, and history--factors that typically help courts determine a statute's objectives and thereby illuminate its text." Almendarez-Torres v. United States, 118 S. Ct. 1219, 1223 (1998). The government argues the text of § 521 demonstrates it is a sentence enhancement because § 521 does not contain any substantive crimes and explicitly refers to the crimes a person must be convicted of to suffer a penalty enhancement under this section. The government also asserts that § 521's heading, "Penalty", denotes it as a penalty enhancing statute rather than a separate substantive crime.

The government argues that § 521's legislative history and treatment by the Sentencing Commission removes any doubt on the issue. A House Conference Report described legislation proposing § 521 as "an amendment to provide increased penalties for Federal gang crimes." H.R. Conf. Rep. No. 103-711, 103d Cong., 2d Sess.

13

394 (1994). Legislators drafting the Violent and Repeat Juvenile Offender Act of 1997 and attempting to amend § 521 by changing it into a separate offense recognized that the current version of § 521 is merely a penalty enhancement statute.

> Currently, 18 U.S.C. 521 provides an additional sentence of up to 10 years for a gang member who [violates § 521]. Section 203 [of the bill] amends this section to address what the Committee believes is the evolving, broader nature of gang crime. In place of the sentence enhancement in current law, section 203 creates a separate criminal offense for the serial commission of various predicate gang crimes.

S. Rep. No. 105-108, 105th Cong., 1st Sess. 82 (1997). Additionally, the Sentencing Commission's classification of § 521 as a sentence enhancement provision rather than a criminal offense supports the government's position. We are persuaded by the overwhelming evidence of Congress' intent regarding § 521. For the above reasons, we hold that § 521 is a sentence enhancement statute rather than a separate offense.

2. Sufficiency

Matthews argues that the district court erred in finding his conduct furthered criminal gang activity and maintained his position within the gang supporting its two year enhancement pursuant to § 521. We review the factual findings of a district court regarding sentencing for clear error. See United States v. Cardenas-Alvarez, 987 F.2d 1129, 1133 (5th Cir. 1993).

Matthews contends this was a crime of opportunity rather than a crime contemplated by § 521. He relies solely on Nicholson's

14

testimony that there was no agreement to commit a carjacking.

The government presented the following evidence during the sentencing phase of the trial: (1) Matthews was a member of the Crips gang; (2) the other three occupants of the Chevette were also gang members or gang affiliated; (3) Matthews previously stole the gun used in the carjacking and gave it to Cook, a gang leader, who loaned it to Matthews during the carjacking; (4) Cook was apprehended in the car Matthews stole to escape from the scene of the carjacking; and (5) Matthews bragged about the carjacking to gang affiliates. Based on the above evidence, we cannot hold the district court clearly erred in finding Matthews' activities furthered gang activity and maintained or increased his status in the gang.

III. Evidence

Matthews contends that the district court abused its discretion in allowing hearsay testimony concerning his gang affiliation in violation of his Sixth Amendment confrontation rights and testimony of a "gang expert" at his sentencing hearing in violation of <u>Daubert</u>.

A. Hearsay

F.B.I. Agent Walter Henry testified at Matthews' sentencing hearing essentially summarizing testimony or statements of Cook, Douglas, Williams and Nicholson concerning Matthews' gang ties. Matthews argues that Henry's testimony violates his Sixth Amendment confrontation right because he was denied the opportunity to cross-

15

examine the declarants of these statements.

The government argues that Henry's testimony was proper relying on United States v. Goldfaden, 959 F.2d 1324 (5th Cir. 1992). There we held:

> [g]enerally, sentencing proceedings do not offer criminal defendants the same procedural safeguards as trials. Accordingly, sentencing courts may rely on reliable information, including hearsay, in imposing sentences. Indeed, the Federal Rules of Evidence expressly exclude sentencing hearings from the hearsay rules.

Id. at 1330 (citing McMillan v. Pennsylvania, 477 U.S. 79, 91, (1986) and Fed. R. Evid. 1101(d)(3)) (other internal citations omitted).

The district court's decision was within its discretion because the Agent's testimony was sufficiently reliable and was duplicative of other evidence presented at trial and in the sentencing phase.

B. Daubert

Matthews argues the district court abused its discretion in allowing a "gang expert" to testify regarding Matthews' gang affiliation at his sentencing hearing in violation of Daubert.v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 592 (1993). Detective Dyer, an officer of San Antonio Police Department's gang investigation unit, testified at Matthews' sentencing hearing concerning the Crip gang's influence, gang leadership, gang terminology and tatoos, and a gang database kept by the department. He identified Matthews as a gang member and testified Matthews was

16

documented as a gang member in the database about six times. Matthews argues that Dyer's methodology was unreliable, not subject to peer review, and not generally accepted within the scientific community as Daubert requires.

The government argues that Dyer's testimony was clearly admissible because he previously testified as an expert in local gangs at least twenty times. Additionally, the government argues his testimony was proper because Daubert interpreted Fed. R. Evid. 702, and the Federal Rules of Evidence do not apply to sentencing hearings. See United States v. Paden, 908 F.2d 1229, 1235 n.3 (5th Cir. 1990); Fed. R. Evid. 1101(d)(3). Finally, the government argues Daubert is inapplicable to Dyer's testimony because Daubert only applies to "scientific" experts rather than an expert in criminal activity. See United States v. Williams, 81 F.3d 1434, 1441-42 (7th Cir. 1996).

We review a district court's decision to admit or exclude expert testimony for abuse of discretion. See Moore v. Ashland Chemical, 151 F.3d 269, 274 (5th Cir. 1998) (en banc) (citing General Electric Co. v. Joiner, 522 U.S. 136, 118 S. Ct. 512, 139 L.Ed.2d 508 (1997)). Even assuming that an abuse of discretion occurred, the erroneous admission of expert testimony is subject to harmless error analysis. See United States v. Griffith, 118 F.3d 318, 323 (5th Cir. 1997). We need not determine the effects of Daubert on non-scientific expert testimony at sentencing in light of the Supreme Court's recent decision in Kumho Tore Co., Ltd. v.

17

Carmichael, 119 S Ct. 1167 (1999) (holding Daubert's "gatekeeping" obligation applies to not only scientific testimony, but to all expert testimony), because the remaining non-expert evidence of Matthews' gang related activities at sentencing is sufficient to support the enhancement under § 521. Agent Henry, Nicholson, Williams, and Douglas supplied the factual testimony presented by the government supporting the enhancement. For the above reasons, we affirm the district court's enhancement of Matthews' sentence pursuant to § 521.

## CONCLUSION

For the above reasons, we vacate Matthew's carjacking sentence and remand to the district court for re-sentencing in light of Jones v. United States, 119 S. Ct. 1215, 1228 (1999). In all other respects the district court is affirmed.

**AFFIRMED** in part**;** **VACATED** and **REMANDED** in part.