IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 7, 2007

Charles R. Fulbruge III
Clerk

No. 04-40355

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOSE ALREDO JIMENEZ; JOSE A. MORALES, also known as Camaron;
BENITO VILLARREAL;  JUAN CONTRERAS,

Defendants-Appellants.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:02-CR-562-3

Before JONES, Chief Judge, and STEWART and CLEMENT, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Appellants Jose A. Jimenez, Juan Contreras, Jose A. Morales, and Benito Villarreal were convicted on numerous counts for their involvement in a drug trafficking ring. They appeal their convictions and sentences, alleging numerous grounds of error at trial and sentencing.  We vacate the sentences of Jimenez, Morales, and Villarreal and remand for resentencing in accordance with United States v. Booker, 125 S. Ct. 738 (2005).  We affirm the judgment of the district court in all other respects.

## I. FACTUAL AND PROCEDURAL HISTORY

This appeal involves a complex drug-trafficking ring that operated in South Texas. At all relevant times, Jimenez served as Constable for Precinct Seven, Cameron County, Texas; Villarreal was one of Jimenez's Sergeants; and Contreras was one of Jimenez's Deputies (collectively the "Constables"). Morales was not a law enforcement officer, but worked with the Constables and arranged for drugs to cross the Rio Grande river within Precinct Seven. Once the shipments, usually marijuana, but on one occasion cocaine, reached the United States side of the river, the Constables took possession, delivered the loads to the drug traffickers, and then provided escort for the drug traffickers until the loads safely arrived at stash houses. Jimenez commanded the Constables' operation, while Contreras and Villarreal were directly involved in retrieving the loads from the edge of the river, delivering the loads to drug traffickers, and providing escort for the traffickers to the stash houses.

Starting in July of 2000, Border Patrol agents began noticing a pattern of suspicious activity on the part of the Constables. The Constables were frequently seen near the river on private property, where they had no authority to be, ostensibly conducting drug interdiction efforts. Though the Constables claimed to be "laying in" for drug traffickers or responding to calls, the Constables' duty ledger recorded no such calls or activity. On more than one occasion Border Patrol agents found the Constables hiding in the brush near the river, armed with rifles and wearing unmarked camouflage fatigues. Despite the danger of friendly-fire incidents, the Constables refused to keep the Border Patrol apprised of these "drug interdiction" efforts.

Meanwhile, the Constables themselves were keeping close tabs on the Border Patrol agents' activity. Evidence at trial indicated the Constables were monitoring Border Patrol radio traffic. The Constables were also aggressive about obtaining information from Border Patrol agents concerning interdiction

efforts, hot spots for alien and drug crossings, and sensor locations. In December 2000, Contreras quizzed a Border Patrol agent in detail about a drug seizure two days earlier—a seizure that Border Patrol had not reported to other agencies or otherwise made public. Throughout the year 2000, the Constables were frequently seen in close proximity to locations where it appeared drugs had recently crossed the river. Constables were seen eliminating signs of crossings on the river bank, parking on the river's edge, and driving at high rates of speed to and from the river. When questioned about their activities, the Constables offered inconsistent explanations of their behavior.

On February 22, 2001, Border Patrol agents responded to a sensor alert on the river's edge and found Constables Villarreal and Contreras in the vicinity. Contreras had 292 pounds of marijuana in the trunk of his vehicle, in four wet, muddy parcels. Contreras claimed to have seized the marijuana and loaded it into the trunk himself, though his uniform was clean and showed no signs of lifting close to 300 pounds of wet, muddy marijuana. Meanwhile, another Border Patrol agent discovered an additional 400 pounds of marijuana concealed at the river's edge, as well as five or six individuals in their underwear who, upon seeing the agent, swam across the river to Mexico. The agent also found tire marks and boot tracks indicating Contreras had been there recently.

Further investigation of Contreras's "seizure" produced inconsistent explanations from the various Constables. Ultimately, the Constables, Morales, and several others were arrested. On October 8, 2002, Jimenez, Contreras, Morales, and Villarreal were indicted in federal court in the Southern District of Texas.[1] All appellants were charged with conspiracy to possess with intent to distribute more than 1000 kilos of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A) (count one) as well as two counts of possession with

---

[1] Ramon Montoya was also indicted along with the four above-named Appellants, but he is not a party in this appeal.

intent to distribute more than 100 kilos of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) (counts four and five). Jimenez and Villarreal were each charged with one count of using a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c) and 2 (counts six and seven respectively); Contreras was charged with two counts of the same offense (counts six and seven). Morales was charged with an additional count of possession with intent to distribute 100 kilos or more of marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A) (count two).[2] Jimenez was also served with a notice of forfeiture regarding a parcel of real property in La Feria, Texas.

On June 24, 2003, the four Appellants proceeded to jury trial; testimony commenced on July 22, 2003. Over the course of the trial considerable evidence was presented against the Appellants, including the testimony of Border Patrol agents and co-conspirators, as well as documentary evidence, such as telephone records, all of which revealed a long-standing arrangement whereby the Constables, Morales, and others trafficked large drug shipments from Mexico. Morales confessed, but did not testify at trial. Part of his confession which implicated Contreras was admitted into evidence through the testimony of a government witness, Drug Enforcement Agent George Delaunay.[3] After hearing

---

[2] Count three of the indictment pertained only to Montoya.

[3] During the cross-examination of Drug Enforcement Agent George Delaunay, counsel for Contreras was attempting to establish that the Government's investigation of the Constables was not based on evidence, but rather on pre-existing bias. In response to repeated questioning on this point, Agent Delaunay explained that he based his inferences in part on Morales' confession.

Q: Your suspicion of [Constable Contreras] affected your inference, didn't it?
A: I think there was a – different levels at different times of suspicion and –
Q: Okay. Let – let me ask it this way: you certainly didn't look at these [phone call records] in the light of the presumption of innocence, did you?
A: No, I was looking at them from a factual point of view, sir.

– – –

Delaunay's testimony and from counsel, the district court permitted limited testimony regarding Morales' confession as related to the calls Morales made to Contreras' pager as well as related conversations he had with Contreras.[4]

On August 12, 2003, the jury returned its verdict. Jimenez was found guilty of all the counts for which he was indicted. The jury also found his interest in the property cited in the forfeiture count subject to forfeiture. Likewise, Contreras and Morales were found guilty of all the counts for which they were indicted. Villarreal was found guilty of one count of possession with intent to distribute, and he was acquitted of all other charges.

The district court sentenced each of the Appellants to lengthy prison terms. Jimenez was sentenced to life imprisonment, with a five-year term of supervised release on count one, 480 months imprisonment, with a five-year term of supervised release on both counts four and five, and 60 months imprisonment with a five-year term of supervised release on count six. The court ordered all but count six to run concurrently and also finalized the order of forfeiture against Jimenez. Contreras was sentenced to 292 months imprisonment, with concurrent five-year terms of supervised release on counts one, four and five. He was sentenced to 60 months imprisonment, with a three-year term of supervised release on count six and 300 months imprisonment, with a three-year term of supervised release on count seven. The court ordered that counts six and seven run consecutive to each other and to the other counts, for a total sentence of 652 months imprisonment. The district court sentenced

---

Q:     Okay. without going over every single call, you can't say of your own personal knowledge, except for the two instances that you mentioned before noon, who made any of these calls, can you?

A:     I can in relation to Mr. Morales. He told me when he confessed that he would call Mr. Contreras on his pager and that he would use the phone to do that, sir.

[4] The district court also allowed very limited testimony from Delaunay regarding communications Morales had with Jimenez.

Morales on counts two, four, and five to concurrent terms of imprisonment of 360 months, with concurrent terms of five-years of supervised release. Villarreal was sentenced to 132 months imprisonment, with a four-year term of supervised release on count five. All four Appellants timely filed their notices of appeal.

## II. DISCUSSION

### A. Sufficiency of the Evidence

Both Contreras and Villarreal challenge their convictions for aiding and abetting the possession with intent to distribute in excess of 100 kilos of marijuana. In order for a defendant to be convicted of possession with intent to distribute, the Government must prove that the defendant (1) knowingly (2) possessed marijuana (3) with intent to distribute it. United States v. Penaloza-Duarte, 473 F.3d 575, 579 (5th Cir. 2006). To prove that a defendant aided and abetted, the Government must prove that the three elements of the substantive offense occurred and that the defendant associated with the criminal venture, purposefully participated in the criminal activity, and sought by his actions to make the venture succeed. See United States v. Delagarza-Villarreal, 141 F.3d 133, 140 (5th Cir. 1997); 18 U.S.C. § 2. Contreras argues the evidence failed to show beyond a reasonable doubt that he possessed the drugs for any unlawful purpose. Rather, he contends that given that he was in uniform, on duty, and in a marked constable car, the evidence supports his assertion that he was seizing contraband, not trafficking it. Therefore, according to Contreras, the evidence was insufficient to support his convictions on counts four or five. Villarreal argues that the evidence proves that he was not near Contreras at the time the marijuana forming the basis for count five was found in Contreras' vehicle. Thus, according to Villarreal, there was not a "sufficient nexus" between the drugs and Villarreal, and conviction on that count should be reversed. Contreras also challenges his convictions for conspiracy (count one) and use of a firearm (counts five and six). For the conspiracy count, the Government was

required to prove beyond a reasonable doubt: (1) the existence of an agreement between two or more persons; (2) the defendant's knowledge of an agreement; (3) the defendant's voluntary participation in the conspiracy; and (4) that the overall scope of the conspiracy involved more than 1,000 kilos of marijuana. See United States v. Sacerio, 952 F.2d 860, 863 (5th Cir. 1992). For the firearms counts, the Government needed to prove that: (1) the defendant used or carried a firearm (2) when he was involved in a drug-trafficking crime. See 18 U.S.C. § 924(c); United States v. Brown, 161 F.3d 256, 257 n.2 (5th Cir. 1998) (en banc).

We review a claim of insufficient evidence by viewing all of the evidence, and all reasonable inferences that may be drawn from it, in the light most favorable to the verdict. United States v. Miles, 360 F.3d 472, 476-77 (5th Cir. 2004); United States v. Ortega Reyna, 148 F.3d 540, 543 (5th Cir. 1998). "In order to support a conviction, the evidence need not eliminate all possible hypotheses of innocence or be wholly inconsistent with every conclusion except guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." United States v. Gadison, 8 F.3d 186, 189 (5th Cir. 1993). When appellants have preserved their sufficiency argument by moving for judgment of acquittal at the close of the government's case in chief and at the close of all the evidence, we review their arguments de novo. Penaloza-Duarte, 473 F.3d at 579.

We conclude that Appellants' arguments are completely without merit. As far as the possession convictions, several co-conspirators testified in detail how the Constables supplied marijuana to them on multiple occasions as part of an ongoing scheme. This testimony, combined with the observations of law enforcement officers, incriminating comments made by the Constables themselves, and telephone records showing coordinated communications between the Appellants at relevant times, all of which was presented to the jury, is more than adequate to support the convictions. Even if Villarreal were not in

physical possession of a load of marijuana, there was ample evidence showing that he aided and abetted in the possession of the marijuana, which is sufficient. United States v. Gonzales, 121 F.3d 928, 936 (5th Cir. 1997). Contreras' arguments regarding the conspiracy and firearms convictions are equally meritless. Given the evidence presented during the trial, a reasonable juror could conclude that not only was Contreras a key and central player in this drug-trafficking conspiracy, but also that he unlawfully carried and used his firearm to protect the drug traffickers and further the conspiracy. See United States v. Brown, 915 F.2d 219, 224-25 (6th Cir. 1990). As the Government succinctly states in its brief: "The evidence demonstrates that Contreras was part of a dedicated group of corrupt law enforcement personnel, who joined with drug traffickers, who subverted their law enforcement skills of surveillance, counter-surveillance, camouflage and clandestine movement, and coordinated activities, and put their skills to work for the drug traffickers." After independently reviewing the record, we agree. As such, we hold that the evidence was sufficient to support the convictions of Contreras and Villarreal.

## B. Bruton Error

Contreras argues that the trial court erred when it allowed, over his objection, Morales' statements implicating Contreras into evidence.[5] Contreras bases his argument on Bruton v. United States, where the Court held that the Sixth Amendment's Confrontation Clause is violated when a non-testifying co-defendant's confession is used to inculpate the defendant. 391 U.S. 123, 126 (1968). He argues that the trial court's error requires reversal.[6]

---

[5] Specifically, Delaunay testified that when Morales confessed, Morales explained how he would contact Contreras' pager when he wanted to arrange a crossing and delivery of a marijuana shipment. Delaunay also provided extensive testimony regarding the number and timing of pages and other telephonic communication between Morales and Contreras.

[6] Alternatively, he argues, if the testimony was going to be admitted, the court erred in not giving the jury a curative Delli Paoli instruction on the spot. However, the Court

While we review constitutional challenges de novo, United States v. Nutall, 180 F.3d 182, 188 (5th Cir. 1999), the trial court's evidentiary decisions on a Bruton issue are reviewed for abuse of discretion. Id.; United States v. Hitt, 473 F.3d 146, 159 (5th Cir. 2006). Bruton error calls for reversal unless it was (a) at the invitation of the defendant, or (b) harmless beyond a reasonable doubt. United States v. Matthews, 178 F.3d 295, 300 (5th Cir. 1999).

We conclude that Contreras' argument must fail. First, a review of the trial transcript indicates that the error was invited. We agree with the Government that defense counsel opened the door to the testimony in question. The testimony was first elicited by Contreras' own attorney on cross-examination after he repeatedly asked Delaunay to explain the basis for his suspicions about Contreras. See United States v. Ramos, 861 F.2d 461, 468 (6th Cir. 1988) (defense counsel's insistence on pursuing line of questioning opened door to Bruton error). In light of that, the district court did not err when it allowed the Government limited questioning of Delaunay regarding Morales communications with Contreras. Second, assuming arguendo, that the error was not invited, it was harmless beyond a reasonable doubt. Matthews, 178 F.3d at 300. As already discussed, the other evidence of Contreras' guilt is substantial. It includes co-conspirators' testimony, Border Patrol observations, Contreras' own behavior, his inconsistent explanations, and his extensive telephone contacts with known drug traffickers. Therefore, we reject Contreras' arguments regarding Bruton error.

C. Prosecutorial Misconduct

Contreras moved for a new trial before the district court on the basis of prosecutorial misconduct. He based his motion on a number of comments the

overruled Delli Paoli v. United States, 352 U.S. 232 (1957), in Bruton, and so if there was Bruton error not covered by any exception, a Delli Paoli instruction would not have cured it.

prosecutor made before the jury.[7] The district court denied his motion. We review a denial of a motion for mistrial for abuse of discretion. United States v. Wyly, 193 F.3d 289, 298-99 (5th Cir. 1999). When evaluating a claim of prosecutorial misconduct, we first ask whether the prosecutor's remarks were improper, and if so, whether they "prejudicially affected the substantive rights of the defendant." Id. (internal quotations omitted). To warrant a new trial, prosecutorial misconduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." Id. at 299 (internal quotations omitted).

Contreras' arguments are completely without merit. Not only does Contreras misstate the record when making some of his claims, but more importantly, he also fails to show that any prosecutorial misconduct was so "pronounced and persistent" as to "permeate the entire atmosphere of the trial." We conclude that the district court did not abuse its discretion in denying Contreras's motion.

D. Evidentiary Rulings

Contreras challenges on appeal a number of the district court's rulings to admit evidence during the trial.[8] A district court's decision to admit or exclude evidence is reviewed for abuse of discretion. United States v. Yi, 460 F.3d 623, 631 (5th Cir. 2006). Even if there were an abuse of discretion, the conviction will

---

[7] Specifically, Contreras argued he was entitled to a new trial because the prosecutor: (1) failed to correct a false impression that Contreras paid $100,000 cash for a new truck, when in truth he had paid $15,000 down and financed the remainder; (2) allegedly argued to the jury, "You couldn't pay me any amount of money to sit at [defendants'] table;" (3) implied that defendants had a duty to test or fingerprint the seized marijuana; and (4) improperly commented on one co-conspirator's instruction to another to "call the lawyers."

[8] Specifically, he challenges the district court's decision to admit: (1) evidence regarding the activity of illegal aliens; (2) Border Patrol Agent Salazar's testimony; (3) alleged hearsay regarding payments to Contreras; (4) an uncharged cocaine shipment; (5) summary charts of telephone activity; (6) timesheets showing the Constables' on and off-duty hours; and (7) records of telephone calls obtained via administrative warrant.

not be overturned absent prejudice to the defendant. Id. After reviewing the record, we have determined that the district court did not abuse its discretion while making its evidentiary rulings. Even assuming arguendo that the district court had abused its discretion, Contreras's challenges would still fail as he has not demonstrated prejudice.

E. Jury Instructions

Contreras argues it was inappropriate for the judge to instruct the jury on Pinkerton co-conspirator liability.[9] Because the prosecutor failed to submit a proposed Pinkerton instruction prior to trial, Contreras argues he was "misled" and without notice that the jury would be instructed on Pinkerton liability. The standard of review we employ when determining whether a jury instruction was appropriate is "whether the court's charge, as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of law applicable to the factual issues confronting them." United States v. Mendoza-Medina, 346 F.3d 121, 132 (5th Cir. 2003) (internal quotations omitted).

Contreras' argument is without merit. Contreras was plainly charged with conspiracy in the indictment, and thus he was on notice that he was accused of conspiring with others in this drug-trafficking ring. Further, this Court's jurisprudence placed him on notice of the fundamental concept of Pinkerton liability. As we explained in United States v. Basey, 816 F.2d 980, 997 (5th Cir. 1987) (internal quotations omitted): "Once we have concluded that there was sufficient evidence to prove that [a defendant] was a knowing member of the conspiracy, no additional evidence is necessary to warrant a conviction on a substantive count which charges him with an event which occurred while he was

---

[9] In Pinkerton v. United States, 328 U.S. 640 (1946), "the Supreme Court held that a conspirator can be found guilty of a substantive offense committed by a co-conspirator and in furtherance of the conspiracy, so long as the co-conspirator's acts are reasonably foreseeable." United States v. Mata, 491 F.3d 237, 242 n.1 (5th Cir. 2007).

11

active as a member of the conspiracy." The authorities Contreras cites in support of his argument are not applicable to these facts. E.g., United States v. Ienco, 92 F.3d 564, 569-70 (7th Cir. 1996) (reversible error where judge denied prosecutor's request for Pinkerton instruction at outset of trial, defendant proceeded to incriminate co-defendant, and judge then reversed course and granted a Pinkerton instruction). Because Contreras has not asserted that the Pinkerton instruction given by the district court incorrectly stated the law, his argument must fail. See United States v. Thomas, 348 F.3d 78, 85 (5th Cir. 2003).

F. Sentencing Errors

Appellants raise two sets of arguments contesting the sentences imposed on them by the district court. First, Jimenez, Morales, and Villareal argue that this district court improperly applied the United States Sentencing Guidelines as mandatory.[10] The Appellants were sentenced prior to the Supreme Court's decision in Booker, where the Court struck down the statutory provisions that made the Sentencing Guidelines mandatory. 125 S. Ct. 738 (2005). Second, all four Appellants contend that the district court enhanced their sentences based on improper factual determinations. Both Jimenez and Morales contend that the district court improperly held them responsible for trafficking a load of cocaine, since it was not charged in the indictment. Jimenez also argues that the court erred when it applied a three-level "manager or supervisor" enhancement to his sentence; Morales asserts that the court erred when it failed to apply a two point minor role downward adjustment pursuant to U.S.S.G. § 3B1.2. Villarreal argues that the district court erroneously enhanced his sentence based on its conclusion that he assisted in the trafficking of 695 kilos of marijuana, even

---

[10] Contreras did not raise this argument on appeal. Issues not raised in an appellant's initial brief as required by FED. R. APP. P. 28 are deemed waived. United States v. Ogle, 415 F.3d 382, 384 n.1 (5th Cir. 2005).

though he was only convicted of count five, which alleged possession of approximately 132 kilos. Similarly, he contends that his sentence was further enhanced based on the court's conclusion that he possessed a firearm while he was trafficking drugs, even though the jury dismissed that count of the indictment against him. Contreras raises objections similar to those of the other Appellants regarding the cocaine load and the district court's calculation of the amount of marijuana involved.

We review the district court's interpretation and application of the Sentencing Guidelines de novo, and its factual determinations for clear error. United States v. Hinojosa, 484 F.3d 337, 340 (5th Cir. 2007). The district court's determination that unadjudicated conduct is "part of the same course of conduct or common scheme or plan" is a factual finding subject to review under the clearly erroneous standard. Id. (internal quotations omitted).

The Government concedes that the district court erred in mandatorily applying the Sentencing Guidelines, and does not contest that Jimenez, Morales, and Villarreal will have to be resentenced. In light of that, we need not consider whether the district court improperly enhanced the sentences of those three Appellants. However, we conclude that Contreras' arguments concerning sentencing enhancements is without merit. A district court's determination of facts for sentencing purposes is only subject to a preponderance of the evidence standard. United States v. Partida, 385 F.3d 546, 565 (5th Cir. 2004). In Partida, we explained that "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." Id. (internal quotations omitted). This standard governs the district court's findings as to the amount of contraband involved, and we hold that Contreras has failed to prove that the district court did not have sufficient evidence before it to make that factual determination. Similarly, the district court properly could have

found the uncharged cocaine to be relevant conduct. The cocaine load was one of a series of shipments transferred in the same manner, by substantially the same co-conspirators, for the same purpose. Uncharged conduct can be relevant to sentencing where there are common accomplices, a common purpose, a similar modus operandi, or where the conduct is part of an "ongoing series of offenses." Hinojosa, 484 F.3d at 340-41. We thus conclude that Contreras has not shown clear error as to any of the district court's factual determinations at sentencing.

G. Other Issues

Contreras argues that the notes taken by one of the Government agents when he interviewed two co-conspirators were discoverable under the Jencks Act, and the district court abused its discretion by ruling to the contrary. "The standard of review for discovery matters is steep." United States v. Holmes, 406 F.3d 337, 357 (5th Cir. 2005). The district court's administration of discovery rules will not be reversed unless the appellant shows an abuse of discretion that prejudiced his substantial rights. Id. Agent Vela's notes were not discoverable. The Jencks Act applies only to a written statement "signed . . . or approved" by the witness. 18 U.S.C. § 3500(b), (e)(1). The district court reviewed these notes in camera and determined they were not a "signed or approved" witness statements. Thus, the district court did not abuse its discretion.

Next, Contreras asserts that the district court committed reversible error in denying him a hearing on his motion for new trial. Denial of a hearing on a motion for a new trial is reviewed for abuse of discretion. United States v. Blackthorne, 378 F.3d 449, 455 (5th Cir. 2004). The district court did not abuse its discretion.

Contreras also submits, without providing any explanation, that "admonishments of the court to counsel" constitute reversible error. He also argues, again without explanation or citation to the record, that "[t]he trial court erred in reconvening the trial after granting Mr. Warner's Motion for Mistrial."

14

Further, he complains that the trial court improperly limited his cross examination of witnesses.[11]  These unsupported assertions are not properly presented on appeal, and are accordingly waived.  FED. R. APP. P. 28(a)(9)(A).  Contreras also argues that the drug equivalency tables are unconstitutional, but the only authority he cites is a Fourth Circuit opinion holding that the tables are constitutional.  This argument is waived.

Finally, Contreras submits that the trial court "erred in accepting" a guilty verdict because the jury was permitted to infer intent to distribute from the quantity of the marijuana.  Contreras argues that this created a "mandatory inference" that impermissibly shifted the burden of proof to the defendants.  This was not, however, a mandatory inference, but a permissible one.  A jury is permitted, but not required, to infer intent to distribute when a person possesses an amount of a controlled substance that is too large to be used by the possessor alone.  United States v. Cain, 440 F.3d 672, 674-75 (5th Cir. 2006).  Here, the 292 pounds of marijuana found in Contreras' vehicle was sufficient to allow the jury to infer intent to distribute.  Contreras states no cause for reversal here.

## III.  CONCLUSION

For the above reasons, we VACATE the sentences of Jimenez, Morales, and Villarreal and REMAND for resentencing, and we AFFIRM the judgment of the district court in all other respects.

---

[11]  Contreras did not raise this in his Motion for New Trial.

15