IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 7, 2009

Charles R. Fulbruge III
Clerk

No. 08-20175

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

RUBEN DELFIN PEREZ

Defendant - Appellant

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:07-CR-00204-1

Before SMITH and SOUTHWICK, Circuit Judges, and RODRIGUEZ, District Judge.[*]

PER CURIAM:[**]

Defendant-Appellant Ruben Perez appeals his conviction of conspiracy to possess cocaine with intent to distribute and aiding and abetting the possession of cocaine with intent to distribute. He argues that the evidence was not sufficient to support either conviction and that certain testimony of a co-conspirator was inadmissible. We AFFIRM.

---

[*] District Judge of the Western District of Texas, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I.  BACKGROUND

On April 24, 2007, Perez drove a truck from the border town of Reynosa, Mexico, across into Texas, and eventually to Houston.  In Houston, Perez met Miguel Angel Navarro-Barajas, one of his co-defendants, at a restaurant.  There, Perez gave Navarro the keys to the truck.  Navarro left Perez at the restaurant and took the truck to a warehouse.  At the warehouse, Navarro met with a group of men who gave him $33,000 in exchange for a large amount of cocaine that had been located in a secret compartment under the bed liner of the truck.  Police had the warehouse under surveillance and quickly arrested everyone present.  While Navarro was being questioned at the scene of his arrest, his cell phone began to ring.  Navarro told one of the officers that it was the truck's owner who was calling.  The officer answered the phone and pretended to be Navarro.  The caller was Perez, who asked when the truck would be returned.  The officer, posing as Navarro, told Perez when to expect him.  When the meeting occurred, Navarro identified Perez.  The accompanying officers arrested him.  At that time, Perez told the officers that the truck was his.

Each of Perez's four co-defendants pled guilty, but Perez chose to go to trial. At trial, Navarro testified against Perez and shed more light on the events surrounding the drug transaction.  According to Navarro, a man in Mexico named Clemente arranged the drug transaction and designated the roles for those involved.  Navarro put the cocaine into the truck's secret compartment while in Mexico and took the truck to Monterrey, Mexico.  From there, Perez's son drove the truck to his father in Reynosa.  Perez was designated as the driver to cross the border and take the truck to Houston.  Navarro followed Perez in his own car.  Navarro stated that he and Perez did not on April 24 talk about the presence of cocaine in the truck, and they did not talk about the secret compartment in the truck. The only conversation that day alluding to drugs was a statement that Navarro claims Perez made at the restaurant where they met.

At that time, Perez allegedly said that it was a bad omen that Navarro's car was searched at the border crossing and Perez's truck was not. Navarro testified that he and Perez had brought drugs into the United States on previous occasions and that Perez knew that there was cocaine in the truck on April 24. He also testified that because each man knew his role in the transaction, there was no need to discuss the topic on April 24.

Navarro also testified that Perez telephoned him on April 20, 2007, to let him know that April 24 would be the date for the deliveries. The call was corroborated by cell phone records that showed a number of calls between Perez and Navarro on April 20 and April 24. The only other evidence of Perez's involvement in the drug transaction, outside of Navarro's testimony, was a photograph of him driving the truck across the border.

At trial, the jury found Perez guilty of both charges. On appeal Perez raises four arguments: (1) evidence that he had the knowledge and intent necessary to be guilty of conspiracy was insufficient; (2) evidence that he had the knowledge and intent necessary to be guilty of aiding and abetting possession of cocaine with intent to distribute was insufficient; (3) uncorroborated testimony of a co-conspirator was insufficient to support his conviction; and (4) hearsay testimony of a co-conspirator was improperly admitted.

## II. DISCUSSION

### A. Sufficiency of the Evidence

We give de novo review to a properly preserved claim that the evidence was insufficient. United States v. Jimenez, 509 F.3d 682, 690 (5th Cir. 2007). In reviewing the evidence, all reasonable inferences drawn and credibility determinations made are viewed in the light most favorable to the jury's verdict. United States v. Medina, 161 F.3d 867, 872 (5th Cir. 1998). "This standard applies whether the evidence is direct or circumstantial." United States v. Mergerson, 4 F.3d 337, 341 (5th Cir. 1997). "However, in a case depending on

circumstantial evidence, if the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, a defendant is entitled to a judgment of acquittal." United States v. Bieganowski, 313 F.3d 264, 275 (5th Cir. 2002) (internal quotation marks and citation omitted). Additionally, "[i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt," provided a reasonable jury could conclude that guilt was established beyond a reasonable doubt. Id.

In order to establish the existence of a conspiracy, "the government must prove beyond a reasonable doubt that: (1) an agreement existed between the defendant and one or more persons to violate the applicable narcotics laws; (2) each defendant knew of the conspiracy and intended to join it; and (3) the defendant participated voluntarily in the conspiracy." United States v. Infante, 404 F.3d 376, 385 (5th Cir. 2005). "An express agreement is not required; a tacit, mutual agreement with common purpose, design, and understanding will suffice." Id. Also, "because secrecy is the norm in drug conspiracies, each element of the crime may be established by circumstantial evidence." Id. Uncorroborated testimony from a co-conspirator, including one who has agreed to testify in exchange for leniency, may be found to be sufficient evidence to convict, provided the testimony is not factually insubstantial or incredible. United States v. Westbrook, 119 F.3d 1176, 1190 (5th Cir. 1997).

To establish guilt for aiding and abetting a crime, the government must prove the elements of the substantive offense and that the defendant associated himself with the criminal venture, purposefully participated in the criminal activity, and sought by his actions to make the venture succeed. See United States v. McDowell, 498 F.3d 308, 314 (5th Cir. 2007). The elements of possession of a controlled substance with intent to distribute are: "(1) knowledge,

4

(2) possession, and (3) intent to distribute the controlled substance." United States v. Mata, 491 F.3d 237, 242 (5th Cir. 2007). "To be guilty of possession with intent to distribute, the defendant must have aided and abetted both the possession and the intent to distribute." Infante, 404 F.3d at 384.

Perez challenges the knowledge element of both crimes. He claims that there is insufficient evidence to prove both that he knew drugs were in the truck he was driving and that he had knowledge of the conspiracy. We disagree. At trial, Navarro testified that Perez knew that drugs were in the truck, knew what his role was in the larger scheme, and had participated in similar drug transactions in the past. This testimony supports that Perez knew he possessed a large amount of drugs, knew about and voluntarily participated in the conspiracy, and furthered the conspiracy by bringing the drugs from Mexico into the United States. Moreover, phone records between Navarro and Perez confirm that they were in close contact on April 20 and 24, which confirms key portions of Navarro's testimony. Additionally, a photograph exists of Perez driving the truck across the border. We find nothing in the precedents he cites to undermine the verdict. Navarro's testimony and the other evidence provided sufficient grounds upon which the jury could base a finding of guilt on both the conspiracy and the aiding and abetting charges.

B.    Admission of Co-conspirator Testimony

We review the district court's evidentiary rulings for abuse of discretion. United States v. Hall, 500 F.3d 439, 443 (5th Cir. 2007). Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). However, a statement is not hearsay if it is made by a co-conspirator "during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2). To introduce a co-conspirator's statement, the government must prove by a preponderance of the evidence: "(1) the existence of the conspiracy; (2)

the statement was made by a co-conspirator of the party; (3) the statement was made during the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy." United States v. Hall, 500 F.3d 439, 443 (5th Cir. 2007). "The court may consider the content of the statement at issue as a factual basis for these elements." Id. (citing Bourjaily v. United States, 483 U.S. 171, 181 (1987)).

Perez challenges as inadmissible hearsay Navarro's testimony in which he claimed that Clemente told Navarro who Perez was and that Clemente chose Perez to be the driver because Perez was a safe person. The district court ruled that there was evidence of a conspiracy involving Clemente, Perez, and Navarro; therefore, Clemente's out of court statements were admissible as statements of a co-conspirator. The district court did not abuse its discretion in this decision. Navarro's non-hearsay statements regarding the preparations for the drug transaction combined with his recitation of Clemente's out of court statements provided enough evidence for the district court to find by a preponderance of the evidence that a conspiracy existed between Clemente, Perez, and Navarro. Clemente's statements were made during the conspiracy and in furtherance of it. Therefore, the statements were admissible as non-hearsay.

The district court's judgment is AFFIRMED.